[Crim. No. 12313.   Second Dist., Div. One.   Dec. 20, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. LOUIS GREEN, JR., Defendant and Appellant.

Bernard G. Winsberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, and Roger E. Venturi, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of conviction of robbery.

In an information filed in Los Angeles on November 19, 1965, defendant was charged with robbing Louis Acquistapace of about $780 in money on or about October 14, 1965. Defendant pleaded not guilty and in a trial before the court without a jury was found guilty as charged. After the defendant was found guilty and before he was sentenced it was agreed between the parties and all concerned that defendant would take a polygraph test with reference to the robbery and the findings of such examination or test would be submitted to the court prior to the time of hearing a motion for a new trial and sentencing. At the time set the court considered the polygraph test results, denied a motion for a new trial and sentenced defendant to the state prison. A timely notice of appeal was filed.

A résumé of some of the facts is as follows: Acquistapace (the victim) operated an automobile electric parts shop on Compton Avenue during the times in question. On October 12 or 13, 1965, defendant's accomplice came to Acquistapace's shop and requested a new coil for his automobile. Acquistapace told the accomplice to have the old coil tested before purchasing a new one. The accomplice, with defendant, returned to the victim's shop in a Buick automobile on October 12, or 13, 1965, and the victim tested and supplied a new coil in place of the defective one in the Buick car.

On October 14, 1965, at about 10 or 10:15 a.m., defendant and the accomplice came to the victim's shop in a Buick car driven by the accomplice. Defendant got out of the car, took off his coat and placed it in the car, and then stated to Acquistapace that he wanted the old coil which had been removed previously from the Buick car. Acquistapace, not having thrown away the coil, was agreeable to returning it to defendant and proceeded to his shop with defendant to retrieve it. In the shop Acquistapace stooped to pick up the coil and defendant stepped behind him and held his arms and called to the accomplice, "I've got him, come on in." When the accomplice arrived, defendant said, "Let's get his

money." Defendant said, "Well, let's kill him, let's kill him." A coat was thrown over the victim's head and defendant said, "Hit him." The accomplice hit the victim on the head with some metal object and defendant said, "Hit him harder, kill him." Defendant hit the victim with a metal object and took the victim's wallet which contained $780 in money among other things.

Billy Belyeu operated a business across the street and heard Acquistapace calling for help. Belyeu saw a Buick car quickly departing from the area of the victim's shop and wrote down the license number (HIU 166) of the car on a piece of paper. He also saw another man running from the shop a few moments later. Belyeu went to the shop and saw blood, went to the victim's house adjoining the shop and saw him attempting to make a telephone call.

Deputy Sheriff Rinard initially investigated the case and saw the victim after the assault in a dishevelled and bloody condition. By about 11 a.m. of October 14, 1965, the officer had found the Buick car in a garage at 1517 East 82d Place. During a search of the car, he found certain unemployment papers belonging to the defendant.

The metal article with which the victim was struck, the piece of paper upon which was written the license number of the Buick car and the unemployment papers of defendant found in the car were received into evidence without objection.

Defendant testified that he was not the robber.

Appellant now asserts that the unemployment papers of defendant were the fruit of an unreasonable search and should not have been received into evidence, that the court abdicated its responsibility at the motion for a new trial in favor of the judgment of a polygraph examiner and that the evidence is insufficient to support the judgment. There is no merit to appellant's contentions.

First with reference to the unemployment papers, they were received into evidence without objection. (See *People v. Kelsey,* 140 Cal.App.2d 722, 723 [295 P.2d 462] ; *People v. Brittain,* 149 Cal.App.2d 201, 203 [308 P.2d 38] ; *People v. Goldberg,* 152 Cal.App.2d 562, 572 [314 P.2d 151] ; *People v. Pruitt,* 155 Cal.App.2d 585, 595 [318 P.2d 552] ; *People v. Richardson,* 51 Cal.2d 445, 447 [334 P.2d 573] ; *People v. Robinson,* 62 Cal.2d 889, 894 [44 Cal.Rptr. 762, 402 P.2d 834] ; *People v. Cockrell,* 63 Cal.2d 659, 667 [47 Cal.Rptr. 788, 408 P.2d 116] ; *People v. Talbot,* 64 Cal.2d 691, 709 [51 Cal.

Rptr. 417, 414 P.2d 633]; *People* v. *Clapper,* 233 Cal.App.2d 34, 38 [43 Cal.Rptr. 105].) It is not at all certain that even had there been an objection to the receipt of the papers into evidence, it would have been well taken. (See *People* v. *Webb,* 66 Cal.2d 107 [56 Cal.Rptr. 902, 424 P.2d 342].) Here the officer was in immediate and hot pursuit of the car.

No useful purpose would be served in repeating the facts and the evidence in this case—suffice it to say it is ample to support the judgment. The judge simply believed the victim and his witnesses and disbelieved appellant and his alibi witnesses.

The possibility of appellant's taking a polygraph test came about after the judge had found appellant guilty as charged. The test was agreed to by all concerned and appellant was advised of his legal rights by his own counsel with reference thereto. Appellant chose to take the test. At the hearing on the motion for a new trial, probation and sentencing, the judge noted, "I gather from the letter [from the polygraph examiner] that the defendant completely flunked the examination. The expert came to the same conclusion I did: that he is not telling the truth." Later the judge remarked in effect that he had hoped that the test might change his mind and then said, ". . . but it is clear that it does nothing but reaffirm it."

There was no abdication of any responsibility by the judge. The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.